**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CANELL H.,

       Plaintiff,

    v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

       Defendant.*

No. 21 CV 287

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Canell H.[1] appeals from the Social Security Commissioner's second decision denying him disability insurance benefits and supplemental security income prior to January 16, 2013. For the reasons explained below, the Commissioner's decision is affirmed.

**I.    Standard of Review**

Because the Social Security Appeals Council did not assume jurisdiction over the ALJ decision, it is a final decision of the Commissioner and ripe for review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.984(a). My review here is limited; I ask only whether the ALJ applied the proper legal criteria and supported his decision with substantial evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence means "such relevant evidence as a reasonable mind might

---

* Under Federal Rule of Civil Procedure 25(d), Acting Commissioner of Social Security Kilolo Kijakazi replaces former Commissioner Andrew Saul as the defendant in this case.

[1] I refer to plaintiff by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citation omitted).

Substantial evidence is not a high bar, but the ALJ still must build an "accurate and logical bridge" between the evidence and his conclusion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). That is, the ALJ must provide "enough detail and clarity" in his reasoning "to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (citation omitted). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

## II.   Facts

Canell H. suffers from severe degenerative joint disease of the bilateral knees, mild degenerative changes in the lumbar spine, major depressive disorder, and substance abuse. [12-1] at 30; [12-3] at 150.[2] In August 2012, he arrived at the emergency room with right-sided lower back pain that intermittently radiated down his right leg. [12-1] at 601. He said he'd had similar pain in the past. *Id.* He said he hadn't sought medical treatment for it, but also said that he was prescribed steroids for pain by his primary care doctor in 2009 (though didn't say whether the steroids

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

were for back pain). *Id.* He also reported that he had a history of herniated disks. *Id.*
He said he had no other joint pain; although he felt "like his leg [was] not holding him
up as well," he was able to walk and bear weight without difficulty. *Id.* He also
exhibited a normal range of musculoskeletal motion. *Id.* at 602.

On September 11, 2012, he arrived at the emergency room again, this time
complaining of chest pain. [12-1] at 521, 523. He told the doctor he wasn't
experiencing any other pain. *Id.* at 521. He was discharged the following day. On
September 26, 2012, at an outpatient primary care visit, plaintiff was given a primary
diagnosis of joint pain. *Id.* at 410. He exhibited a normal range of musculoskeletal
motion at that appointment. *Id.* at 407. Two months later, on November 26, 2012,
plaintiff arrived at the hospital with chest pain that he said had been intermittent
for two months prior. *Id.* at 607. He was released the same day. *Id.* at 608. His
symptoms were consistent with gastroesophageal reflux disease, so the doctor
recommended he take Pepcid. *Id.*

On January 16, 2013, at a primary care visit, the doctor noted that plaintiff
had experienced right elbow pain for the past two months and the pain was getting
worse. *Id.* at 411. She also noted that he had "knee weakness and fell down," and that
he reported on-and-off pain (presumably knee pain), especially with ambulation. *Id.*
The doctor noted that he had normal range of musculoskeletal motion but had right
lateral elbow point tenderness on palpation and bilateral knee pain on palpation. *Id.*
at 412. The doctor gave plaintiff a primary diagnosis of right knee pain. *Id.* at 413.

Plaintiff continued to experience and seek treatment for pain after January 16, 2013. Because plaintiff was found to be disabled beginning January 16, 2013, [12-1] at 28, though, I need not review the post-January 16 medical history. The only question here is whether plaintiff should have been found to be disabled four months earlier, starting September 26, 2012. [14] at n.2.

Plaintiff filed for disability insurance benefits and supplemental security income in July 2013, alleging that he became disabled January 1, 2009. [12-1] at 27. Those claims were denied initially in 2013 and upon reconsideration in 2014. *Id.* Plaintiff then filed a request for a hearing with an Administrative Law Judge. At the hearing, plaintiff amended his alleged onset date from January 1, 2009 to September 26, 2012. *Id.*

To decide whether plaintiff was disabled, the ALJ used the agency's five-step process. *Id.* at 27–36. Those steps ask: 1) whether the plaintiff is currently employed, 2) whether the plaintiff's impairment is severe, 3) whether the impairment is one that the Commissioner considers conclusively disabling, 4) if the impairment is not one that the Commissioner considers conclusively disabling, whether the plaintiff's residual functional capacity allows him to perform his past work, and 5) if his RFC is too limited for him to perform his past work, whether there are other jobs in the national economy that he is capable of performing. 20 C.F.R. § 404.1520(a)(4).[3]

---

[3] The plaintiff must be unemployed and severely impaired for the ALJ to proceed to the third step. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). The severe-impairment requirement is de minimis and is only intended to screen out groundless claims. *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). At the third step, the ALJ looks to Appendix 1 to subpart P of Part 404, which lists the impairments the Commissioner considers per se disabling. If a plaintiff has one of the impairments in Appendix 1, he is disabled, and the ALJ does not move on to steps four

In his first decision, the ALJ partially granted plaintiff's claim, finding that plaintiff was disabled beginning January 16, 2013, but was not disabled before then. [12-1] at 36. At step one, the ALJ found that plaintiff was not gainfully employed. *Id.* at 30. At step two, the ALJ found that plaintiff had two severe impairments beginning September 26, 2012 (degenerative joint disease of the bilateral knees and mild degenerative changes in the lumbar spine) and another two severe impairments beginning January 16, 2013 (major depressive disorder and substance abuse). *Id.* At step three, the ALJ found that plaintiff didn't have an impairment that met the severity of the impairments in Appendix 1. *Id.*

Before moving on to steps four and five, the ALJ assessed plaintiff's residual functional capacity. A claimant's RFC is the most physical and mental activity he can perform in a work setting on a regular and continuing basis (eight hours a day, five days a week, or an equivalent work schedule), despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all relevant evidence in the record, SSR 96-8p, 1996 WL 374184, at *5, including: a claimant's complete medical history (including non-severe impairments); statements from medical sources about what the claimant is still capable of; and statements about the claimant's limitations from the claimant himself, his family, neighbors, friends, or other people. 20 C.F.R. § 404.1545(a)(3).

---

and five. But if the plaintiff doesn't have one of the impairments listed in the appendix, the ALJ will calculate his residual functional capacity and apply it in steps four and five. The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

The ALJ began the RFC analysis with plaintiff's reported symptoms. [12-1] at 31. The ALJ followed the Commissioner's two-step process for evaluating symptoms, 20 C.F.R. §§ 404.1529, 416.929, first asking whether there is an underlying medical impairment that could reasonably be expected to produce the claimant's pain or symptoms, and then asking how intense and persistent those symptoms are. [12-1] at 31. Canell H. testified at his first hearing that he had back pain, knee pain, arthritis, tennis elbow, chest pain, and problems with his right foot. *Id.* He said he had "difficulty standing and walking because his knees give out," and didn't think he could stand for more than ten minutes at a time. *Id.*; *see id.* at 58. He tried to walk to the corner store—roughly four minutes from his house—every day to get some exercise. *Id.* at 53, 59–60, 66. Whenever he went out, he wrapped his knees with Ace bandages. *Id.* at 59. But even then, he said, his knees occasionally gave out on the walk, and he had to go to the hospital. *Id.* at 58–59. He'd had knee problems since around 2007, he said, *id.* at 59, and his back had been "messed up" since his 20s. *Id.* at 52.

He also testified that he had memory loss, racing thoughts, and auditory hallucinations (specifically voices telling him to get up, *id.* at 61). *Id.* at 31. Those voices started around 2011 or 2012. *See id.* at 61. He'd also had visual hallucinations (a head peeping around the wall while he watched TV) since around February or March 2013, *see id.* at 60–61, and had experienced difficulty focusing since around 2007 or 2008. *See id.* at 54. In early 2014, he began taking risperidone, *id.* at 63, for

racing thoughts. Before that, he was prescribed Seroquel for depression and bipolar disorder. *Id.*

Based on this testimony, as well as the evidence from plaintiff's medical visits in August, September, and November 2012, the ALJ found that prior to January 16, 2013, plaintiff had the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c). *Id.* at 30. The ALJ found plaintiff could lift up to fifty pounds occasionally and lift or carry up to twenty-five pounds frequently; could not climb ladders, ropes, or scaffolds; but could frequently climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. *Id.*

The ALJ reasoned that plaintiff's impairments could reasonably be expected to cause the pain and symptoms he reported, but that plaintiff's statements about the intensity, persistency, and limiting effects of those symptoms were not entirely credible prior to January 16, 2013. The ALJ reasoned that, although plaintiff complained of right-sided lower back pain and knee issues in August 2012, medical records showed he was able to walk and bear weight without difficulty and exhibited normal range of motion. *Id.* at 31. At an emergency room visit for chest pain in early September 2012, plaintiff denied pain. *Id.* Further, since the alleged September 2012 onset, the record showed "no more than minimal evidence of treatment" received until January 2013, the ALJ reasoned. *Id.* at 31–32. The ALJ also relied on state agency medical consultants' opinions that plaintiff had the RFC to perform medium work. *Id.* at 32 (citing [12-1] at 104–12, 132–43). The ALJ concluded that the severity of plaintiff's knee problems was the result of a fall first documented on January 16,

7

2013. *Id.*; *id.* at 411 ("knee weakness and fell down. With on and off [p]ain especially on ambulation").

The ALJ also concluded that there was no evidence of a medically determinable mental impairment before January 16, 2013, because mental examinations in 2012 "reveal[ed] essentially normal findings." *Id.* at 32. State medical examiners had reached the same conclusion. *See id.* at 138.[4]

At step four, the ALJ found that since September 26, 2012, plaintiff had been unable to perform any past relevant work. *Id.* at 34. Plaintiff previously worked as a warehouse worker, and the vocational expert at the hearing described plaintiff's work as medium as generally performed and medium/heavy as performed by plaintiff. *Id.* at 84.

At step five, the ALJ found that prior to January 2013, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform, specifically janitor (DOT 381.687-018), dishwasher (DOT 311.677-018), and hand packer (DOT 920.587-018).

---

[4] As to plaintiff's RFC after January 16, 2013, the ALJ found that plaintiff could perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). *Id.* at 33. The ALJ found plaintiff could lift up to ten pounds occasionally and five pounds frequently; could stand and/or walk for approximately two hours per eight-hour workday, and sit for approximately six hours per eight-hour workday, with normal breaks; couldn't climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; was limited to simple, routine, and repetitive tasks in work at a variable pace, involving only end-of-day production requirements, with no other periodic or hourly production quotas; and was limited to only occasional interaction with the public, coworkers, and supervisors. *Id.* at 33.

*Id.* at 34–35 (citing vocational expert's testimony). In sum, the ALJ found that plaintiff was disabled beginning January 16, 2013, but not before then.[5]

The Appeals Council denied plaintiff's request for review, *id.* at 8–10, and plaintiff sought judicial review of the ALJ's decision. [12-3] at 185–87. Plaintiff and the Commissioner consented to adjudication by a magistrate judge, [12-3] at 193, who found that the ALJ erred in evaluating plaintiff's subjective symptom statements. *Id.* at 197. She accordingly reversed and remanded for further proceedings. *Id.* at 204.

The magistrate judge found that the ALJ had erred by over-relying on three facts: "1) 'physical examinations throughout 2012 show[ed] essentially normal musculoskeletal and neurological findings,' 2) Plaintiff 'was able to walk and bear weight without any difficulty' despite complaints of right sided lower back, leg and knee pain in August 2012; and 3) 'the record reveal[ed] no more than minimal evidence of treatment received until January 16, 2013.'" *Id.* at 199 (quoting [12-1] at 32).

On the first issue, the magistrate judge noted that the ALJ "inappropriately rest[ed] his credibility determination too heavily on the absence of objective support." *Id.* at 200 (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)). While the ALJ relied on physical examination findings, he didn't address evidence corroborating plaintiff's pain allegations: a doctor's primary diagnosis of joint pain on September 26, 2012; a doctor noting in January 2013 that plaintiff had experienced elbow pain

---

[5] At step five, the ALJ found that after January 16, 2013, there were no jobs that existed in significant numbers in the national economy that plaintiff could perform. [12-1] at 35.

9

for the past two months; and the medical examiner's testimony that it would have been entirely reasonable to assume that plaintiff's bilateral knee pain predated January 16, 2013. *Id.* at 200–01. The ALJ impermissibly "recite[d] only the evidence that support[ed] his conclusion while ignoring contrary evidence," the magistrate judge said. *See id.* at 201 (quoting *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)).

Second, the magistrate judge said, the ALJ failed to explain how plaintiff's ability to walk and bear without difficulty at a doctor's appointment was inconsistent with his allegations of pain. *Id.* And third, the ALJ impermissibly drew negative inferences about plaintiff's lack of treatment for pain before January 16, 2013. *Id.* at 202. Specifically, the ALJ failed to address plaintiff's reasonable explanation for not seeking treatment: he had no insurance and was unable to afford care. *Id.*

On remand, the ALJ held a second hearing, *id.* at 159–81, and issued a second decision. *Id.* at 147–58. This time, the ALJ acknowledged plaintiff's insurance issues and the medical examiner's testimony. Again, though, he decided that other factors undermined plaintiff's credibility and found that plaintiff was not disabled until January 16, 2013. *Id.* at 157. Plaintiff requested review, which the Appeals Council denied. [12-3] at 131–33. Plaintiff then sought judicial review of the ALJ's decision in this court. [1].

## III.   Analysis

The crux of plaintiff's argument is that the ALJ made the exact same mistakes on remand as he made before. He improperly discounted plaintiff's symptom statements and ignored evidence supporting plaintiff's allegations of pain, failed to explain the perceived inconsistency between plaintiff being able to walk and bear

weight without difficulty and plaintiff's allegations of pain, and drew improper inferences from a gap in medical treatment, plaintiff says. [14] at 9–14. Because of those alleged errors, plaintiff says, the ALJ again failed to offer substantial evidence for his conclusion, and should be reversed.

### A.   Canell H.'s symptom statements and evidence supporting his allegations of pain

The magistrate judge found the ALJ erred by relying too much on the lack of objective medical evidence and putting too little stock in (indeed, ignoring entirely) evidence supporting plaintiff's allegations of pain. [12-1] at 200–01. On remand, the ALJ acknowledged evidence he'd ignored before: the medical examiner's statement that plaintiff's bilateral knee pain could easily have predated January 16, 2013. [12-3] at 153. But the ALJ noted that other facts cut against that conclusion: plaintiff didn't complain of knee issues at his September 11 and November 26, 2012 appointments; physical examinations showed no gait problems; and claimant's testimony that he made frequent visits to the ER because he couldn't afford medical care wasn't supported by the record. *Id.*

Plaintiff argues that, despite including this additional reasoning, the ALJ made the same mistake as before by "fail[ing] to explain why documented evidence of joint pain was outweighed by 'essentially normal' physical examinations." [14] at 10 (quoting [12-3] at 201). The ALJ, plaintiff says, again impermissibly disregarded plaintiff's testimony about his pain "simply because it [was] not corroborated by objective medical evidence." *Id.* It is true that relying on the absence of objective medical evidence alone to find that there is no evidence of pain, despite other evidence

11

corroborating the plaintiff's allegations, is legal error. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016). But relying on the absence of objective medical evidence as one factor among others is not. *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). And the other information the ALJ relied on (not complaining of pain at other appointments, not seeking the medical treatment plaintiff said he sought) was not objective medical evidence. The ALJ thus expanded the scope of relevant evidence, as the magistrate judge instructed him to.

Granted, the ALJ failed to acknowledge two pieces of evidence the magistrate judge instructed him to consider: a doctor's primary diagnosis of joint pain on September 26, 2012, and a doctor noting in January 2013 that plaintiff had experienced elbow pain for the past two months. [12-3] at 200. It is true that an ALJ cannot cherry pick evidence, highlighting facts that corroborate his position while ignoring those that undermine it. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *see Gerstner v. Berryhill*, 879 F.3d 257, 261–62 (7th Cir. 2018). Nor can an ALJ "perform[] a cursory analysis and dismiss[] a line of evidence without any discussion." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). But an ALJ is not required to swing to the other side of the pendulum and "discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). So long as the ALJ's discussion "sufficiently addresse[s]" the issues and is supported by substantial evidence, the ALJ's decision will stand. *Pepper*, 712 F.3d at 363.

It would have been preferable for the ALJ to acknowledge the diagnosis of joint pain and the doctor's note that plaintiff experienced elbow pain for two months before January 2013, but the fact that he didn't is not enough to warrant remand. For one, the doctor's note about elbow pain wasn't directly relevant to the disability claim. Plaintiff claimed that he was unable to work because of the severity of pain in his knees and back, not in his elbow. *See* [12-3] at 176–78. Second, the joint pain diagnosis spoke only to the existence of pain, not its severity. And severity is the relevant factor in determining disability. *See* 20 C.F.R. §§ 404.1529(c), 416.929. The ALJ thus addressed the evidence that bore on the relevant question and explained how he arrived at his conclusion. *See Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020).

**B.** **Perceived inconsistency between walking without difficulty and allegations of pain**

Plaintiff argues that on remand, the ALJ again failed to explain how plaintiff's ability to walk and bear weight without difficulty at a doctor's appointment undermined his allegations of back, leg, and knee pain. [14] at 12. An ALJ "must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *see Rainey v. Berryhill*, 731 Fed. App'x 519, 522–23 (7th Cir. 2018). The ALJ did so here. He noted that it wasn't the walking-without-difficulty that alone undermined plaintiff's allegations of pain (or, more specifically, pain sufficient to prevent him from working). It was the walking-without-difficulty in conjunction with other facts: normal range of motion and normal reflexes, subsequent denials of back pain; and subsequent physical

13

examinations that showed "essentially normal" musculoskeletal and neurological findings. *See* [12-3] at 152. Looking at those facts collectively, I am able to "trace the ALJ's path of reasoning" and see why he believed that plaintiff's testimony about the intensity and severity of his pain was inconsistent with other evidence. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). Others may have come to different conclusions, but the ALJ's conclusion was not "patently wrong," and that is the relevant standard of review. *Summers*, 864 F.3d at 528.

## C.    Gap in medical treatment

Plaintiff says that on remand, the ALJ "did little more than go through the motions of 'exploration' before rejecting any stated reasons" for why plaintiff didn't seek treatment. [14] at 13. I disagree. In three separate instances, the ALJ acknowledged plaintiff's financial reasons for not seeking treatment. *See* [12-3] at 151 ("[T]he claimant testified to having gaps in his treatment due to having no insurance and being unable to afford care."); *id.* at 152 ("The undersigned acknowledges the claimant's allegations regarding no insurance and limited resources."); *id.* at 153 ("The undersigned acknowledges … that [claimant's] lack of treatment for knee pain may have been due to his lack of insurance and/or resources."). Ultimately, though, the ALJ didn't believe plaintiff's explanation was fully credible. That's because plaintiff testified at the second hearing that, because he couldn't afford treatment, he frequently went to the ER. *Id.* at 151; *id.* at 167–68. This was new information. The problem was that the record showed no such visits, *id.* at 152, and plaintiff carries the burden of supplying adequate records to prove their claim. *Scheck*, 357 F.3d at 702. (Plaintiff did visit the ER on August 30, 2012 and September 11, 2012, shortly

14

before the alleged date of disability onset. The first visit was for right-sided lower-back pain intermittently radiating into his right leg. [12-1] at 601. The second visit was for chest pain and shortness of breath, *id.* at 520, 523, and plaintiff denied other pain at that visit. [12-3] at 152.)

## IV. Conclusion

Plaintiff's motion for reversing or remanding the Commissioner's decision, [14], is denied. The Commissioner's motion for summary judgment, [17], is granted and the decision is affirmed. The Clerk shall enter judgment in favor of defendant and terminate this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 4, 2022